OPINION OF THE COURT
Alan C. Marin, J.
Gerri Zatlow is the court-appointed guardian for her brother, Douglas Zatlow, an autistic adult 54 years of age who has resided at the DeClemente Residence in Bronx County since 1986. DeClemente is a facility of the not-for-profit Special Citizens Futures Unlimited.
The lawsuit Ms. Zatlow has brought arose as a consequence of the transfer into the DeClemente Residence from another Special Citizens resident facility of a 27 year old “who targets and physically . . . attacks vulnerable people” (claim ¶ 6). According to the claim, the transfer occurred on March 27, 2013 and Zachary L. assaulted Douglas Zatlow soon thereafter — on April 21, 2013 and then three more times, the last of which occurred on February 22, 2015 (id. ¶¶ 17, 112).
Claimant contends that the Office for People With Developmental Disabilities (OPWDD) or the Justice Center for the *442 Protection of People with Special Needs should have investigated or reviewed the transfer to, at a minimum, ensure that Zachary L. was supervised on a one-to-one basis. The Justice Center is headed by an executive director appointed by the Governor. Its statutory authority rests on article 20 of the Executive Law, which is entitled “Protection of People with Special Needs.”[2]
The defendant State of New York moves here to dismiss the claim on the basis that: (1) it is not properly brought on behalf of Douglas Zatlow; (2) no private right of action obtains; and (3) the alleged acts or omissions are immunized.
Proper Party
The claimant side of the caption is simply “Gerri Zatlow,” without reference to her brother Douglas or the guardianship. The claim makes no reference to any items of damages or injuries suffered by Ms. Zatlow, but does seek redress for the physical and emotional injury to her brother (claim ¶¶ 17, 42, 43, 48, 82, 91, 92, 116, 117). Defendant does not submit any precedent in support of the position that the caption cannot be amended to accurately reflect the claim.
Private Right of Action
On private right of action, the defendant cites McLean v City of New York (12 NY3d 194 [2009]), a case in which a three month old fell from a bed at a child care facility. The facility was on a list of registered providers. Section 390 of the Social Services Law is entitled, “Child day care; license or registration required.” The McLean court explained that
“[s]ection 390 is a detailed statute, with 13 subdivisions and many more subparts ... It specifies which child care providers shall be licensed and which only registered . . . Social Services Law § 389 (1) imposes criminal liability for willful violations . . . [b]ut there is no statutory provision for governmental tort liability. It is fair to infer that the Legislature considered carefully the best means for enforcing the provisions of Social Services Law § 390, and would have created a private right of action against erring government agencies if it found it wise to do so. This is not a case where the Legislature has simply prohibited or required certain conduct, and left the mechanism of enforcement to the courts (see e.g. Negrin v Norwest Mtge., *443 263 AD2d 39, 47-48 [2d Dept 1999]).” (12 NY3d at 200-201.)
Turning to another provision of the Social Services Law, article 7 (§ 460 et seq.) is entitled “Residential Care Programs for Adults and Children.” Under this article, no private right of action exists for appointment of a temporary receiver because there is no explicit statutory predicate (Carrier v Salvation Army, 88 NY2d 298 [1996]), but subdivision (2-a) of section 461-c does specifically allow suit by a resident to enforce either the implied warrant of habitability or an individual’s written admission agreement with a facility (Green v Lakeside Manor Home for Adults, Inc., 101 AD3d 809 [2d Dept 2012]).
The Justice Center’s powers and duties are set forth in Executive Law § 553, which runs to more than two dozen subdivisions. In addition, section 558 provides that in case of a failure to comply with its requirements for access to records and facilities, the Justice Center can apply for an order directing compliance in the Supreme Court. Furthermore, section 555 establishes within the Justice Center, a Medical Review Board to investigate and report on any death in a subject facility and make recommendations. The enabling legislation for the Justice Center contains no provision that directly or implicitly allows for a private right of action.[3] It might be noted that the effective date of article 20 was June 30, 2013 (see L 2012, ch 501, § 2, part A, § 18).
While there may be no private right of action against the Justice Center, OPWDD is subject to suit by aggrieved individuals. There are any number of reported cases of individual lawsuits seeking damages arising from acts or omissions of OPWDD or when it was known as the Office of Mental Retardation and Developmental Disabilities[4] (or against the Department of Mental Hygiene) — for example, Maldonado v State of New York (27 Misc 3d 1233[A], 2010 NY Slip Op 51023[U] [2010]), which was a patient-on-patient assault at the Brooklyn Developmental Center.
Immunity; the Nongovernmental Provider
The basic principle is that “[g]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to *444 the plaintiff, apart from any duty to the public in general” (McLean v City of New York, 12 NY3d 194, 203 [2009]).
With that said, providing medical or psychiatric care is a proprietary, not a governmental function, and the standard of care is thus governed by ordinary negligence (Schrempf v State of New York, 66 NY2d 289 [1985]). The line between governmental and proprietary can be difficult to position: in Applewhite v Accuhealth, Inc. (21 NY3d 420 [2013]), four judges classified as governmental a municipal ambulance service with emergency medical technicians who respond to 911 calls, and three judges concluded that the service was proprietary in nature.
But in this case, what is functionally involved is not clear: whether the provision of medical/psychiatric care or an oversight and licensing role — the latter apparently bearing the indicia of the governmental. In any event, there may be an issue of whether a contract service provider is an agent of the State and thus can be held liable for negligence. Claimant contends that a full-time employee of OPWDD was employed at the same time by Special Citizens Futures Unlimited, and that person was described as “instrumental in authorizing the . . . transfer of Zachary L” (claim ¶ 22 [c]).
See Harris v State of New York (117 AD2d 298 [2d Dept 1986]), where a resident of a State-certified family care home locked herself in the bathroom and suffered an epileptic seizure. The appellate court upheld a finding of negligence— the State should not have permitted the family care home to have a bathroom door equipped with a lock that could not be opened from the outside. However, the Court rejected the argument that the State was vicariously liable for the negligence of the family care provider.
In Stephen v State of New York (44 Misc 3d 1209[A], 2014 NY Slip Op 51064[U] [Ct Cl 2014]), the Court of Claims dismissed the claim brought by several employees of a non-State facility who were assaulted by an outpatient who was being treated there pursuant to court order. The outpatient had been receiving regular visits from a psychologist and a caseworker from Creedmoor Psychiatric Center, a facility of the State Office of Mental Health. The court found that the function was governmental in nature and that no special duty was proved.
From a procedural vantage, the Stephen case is instructive — it was decided after trial. The court concludes that defendant’s motion to dismiss cannot succeed at this juncture *445 given that: (i) claimant’s factual assertions are to be deemed true; and (ii) the movant did not address the issues of governmental versus proprietary and vicarious responsibility for a non-State entity.
In view of the foregoing and having reviewed the submissions of the parties, it is ordered that defendant’s motion No. M-87061 is denied.

. See Executive Law, art 20, § 550 et seq., as added by L 2012, ch 501.

. See also the Background and Intent provisions for the rules promulgated pursuant to chapter 501 of the Laws of 2012: 14 NYCRR 701.1, 702.1, 704.1 and 705.1.

. The name of the agency was changed in 2010 (L 2010, ch 168).